UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
WILFREDO LARANCUENT, as Manager :
of LAUNDRY, DRY CLEANERS AND
ALLIED WORKERS JOINT BOARD,
UNITE, AFL-CIO,

                  Plaintiff,

    -against-

STAINLESS PARTNERS, INC., D/B/A/
WORLD CLEANERS,

                  Defendant.
-------------------------------------------------------X

CV-03-2884
(SJF)

**OPINION & ORDER**

FEUERSTEIN, J.

I.    Introduction

    Plaintiff Wilfredo Larancuent, as Manager of Laundry, Dry Cleaners and Allied Workers Joint Board, Unite, ALF-CIO ("plaintiff") has moved to confirm an arbitration award. For the reasons stated below, the motion is GRANTED.

II.    Background

    A.    Facts

    Defendant Stainless Partners, Inc., d/b/a World Cleaners ("defendant" or "employer") is a laundry service company that washes and irons linens for hotels in the New York metropolitan area. Plaintiff is the bargaining representative for Sylvia Landi ("Landi"), who was hired by defendant as a feeder on an ironing machine in August 2002. On March 16, 2003, Landi was terminated by defendant for repeatedly failing to pay attention to jams in the machinery, which

1

caused damage to both garments and equipment. (Def.'s Mem. of Law in Opp'n to Pl.'s Mot. for J. on the Pleadings at 2-3).

    B.    Procedural History

Plaintiff submitted the dispute over Landi's termination to an arbitrator designated in the Collective Bargaining Agreement ("CBA"). Although the agreement entitles the parties to twenty (20) days notice of an arbitration hearing, defendant claims that on or about April 24, 2003, it received notice of an arbitration hearing to be held on May 1, 2003. (Id. at 3). Nevertheless, David Von Lindern ("Von Lindern"), defendant's president, appeared at the hearing and provided arbitrator Beverly Gross with an affidavit from Joe Hijazi ("Hijazi"), defendant's Plant Manager who witnessed the incident at issue. (Id. at 4). According to defendant, both Von Lindern and Landi testified, and the arbitrator asked Von Lindern to contact Hijazi by telephone, which Von Lindern unsuccessfully attempted. (Id.). In her May 5, 2003 written opinion, the arbitrator noted that the Hijazi affidavit "is of no probative value" since his unavailability from the hearing precluded cross-examination. (Answer ¶ 15, Exh. B). The arbitrator sustained the grievance and ordered Landi's reinstatement with back pay. (Id.).

The complaint filed on June 11, 2003 seeks to confirm the arbitrator's award. The answer, served on July 13, 2003, asks this Court to vacate the award, contending: (1) that this Court does not have jurisdiction to confirm the award and that venue is improperly laid; (2) that the application to vacate the award is timely; (3) that the arbitrator was without authority to resolve the dispute since the CBA was not signed at the time of the hearing; (4) that the hearing was held on less than 20 days' notice in violation of the CBA; and (5) that plaintiff's motion should be renewed as a motion for summary judgment after the parties have conducted discovery

to determine if there are any issues of material fact. (Def.'s Mem. of Law in Opp'n to Pl.'s Mot. for J. on the Pleadings at 5).

III.  Analysis

    A.  Standard of Review

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-14 (2000), "is a congressional declaration of a liberal federal policy favoring arbitration agreements" and "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 74 L. Ed. 2d 765, 103 S. Ct. 927 (1983). Judicial review of an arbitration award is "extremely limited." Wall Street Assocs., L.P., v. Becker Paribas, Inc., 27 F.3d 845, 849 (2d Cir. 1994); see also Sanders v. Gardner, 7 F. Supp. 2d 151 (E.D.N.Y. 1998) ("To satisfy arbitration's twin goals of settling disputes efficiently and avoiding long and expensive litigation, arbitration awards are subject to very limited review."). If an arbitration award offers even a "barely colorable justification" for its outcome, it must be confirmed. Matter of Arb. between Andros Compania Maritima, 579 F.2d 691, 704 (2d Cir. 1978); see also Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp., 103 F.3d 9, 12 (2d Cir. 1997).

Courts are notably deferential when reviewing an award issued by an arbitrator acting pursuant to a collective bargaining agreement. See United Steelworkers of America v. Enterprise Wheel and Car Corp., 363 U.S. 593, 596, 4 L. Ed. 2d 1424, 80 S. Ct. 1358 (1960) ("The refusal

of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements."); Int'l Chemical Workers Union Local No. 227 v. BASF Wyandotte Corp., 774 F.2d 43, 45 (2d Cir. 1985) ("In cases in which the arbitrator acts within authority granted by a contract, the courts must defer to the arbitrator's decision."). Accordingly, "the court must grant confirmation of an award unless a statutory basis for vacating or modifying the award is present, or unless the award was made in manifest disregard of the law." Glazer v. AA Premier Realty, Ltd., No. 02-6484, 2003 U.S. Dist. LEXIS 21208 (E.D.N.Y. Nov. 25, 2003) (internal citation omitted).

B.  Jurisdiction and Venue

Defendant contends that this Court lacks subject matter jurisdiction to confirm the arbitrator's award because the arbitration was held in the Southern District of New York. According to section 9 of the FAA, if the arbitration agreement does not specify a jurisdiction in which awards may be confirmed or contested, "then such application *may* be made to the United States court in and for the district within which such award was made." 9 U.S.C. § 9 (2000) (emphasis added). The CBA does not designate a particular jurisdiction for confirmation of awards made under its arbitration provision.

In Cortez Byrd Chips, Inc. v. Bill Harbert Constr. Co., 529 U.S. 193, 204, 146 L. Ed. 2d 171, 120 S. Ct. 1331 (2000), the Supreme Court held that the FAA's venue provisions must be read permissively, rather than restrictively, to permit a motion to confirm, modify, or vacate an arbitration award either where the award was made or in any district proper under the general venue statute. Under 28 U.S.C. § 1391(b)(1), venue is proper in a judicial district where any defendant resides, if all defendants reside in the same state. See 28 U.S.C. § 1391(b)(1) (2000).

4

The sole defendant's place of business is in Brooklyn, located in the Eastern District of New York. Hence, this Court has subject matter jurisdiction over this action and the venue is proper.

C.  Application to Vacate

Defendant contends that it has properly sought vacatur of the arbitration award. The Federal Arbitration Act states that "any application to the court . . . shall be made and heard in the manner provided by law for the making and hearing of motions, except as otherwise herein expressly provided." 9 U.S.C. § 6 (2000). Thus, to vacate an arbitration award, a party must proceed by motion. See Kruse v. Sands Bros. & Co., Ltd., 226 F. Supp. 2d 484, 485 (S.D.N.Y. 2002). Here, defendant has simply raised an affirmative defense in its answer. Since the statute clearly requires a motion to vacate, an affirmative defense is insufficient to vacate an arbitration award.

Additionally, "notice of a motion to vacate . . . an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered." 9 U.S.C. § 12. There is no exception to this three month limitation period. Florasynth, Inc. v. Pickholz, 750 F.2d 171, 175 (2d Cir. 1984) ("[A] party may not raise a motion to vacate . . . an arbitration award after the three month period has run, even when raised as a defense to a motion to confirm."). Since defendant failed to file a motion to vacate by August 5, 2003, three months after the May 5, 2003 issuance of the award, it is barred from doing so now.

D.  Agreement to Arbitrate

Despite federal policy favoring arbitration, parties must actually agree to arbitration before being bound by a arbitrator's ruling. See Mastrobuono v. Shearson Lehman Hutton, 514 U.S. 52, 57, 131 L. Ed. 2d 76, 115 S. Ct. 1212 (1995) (noting that "the FAA's proarbitration

5

policy does not operate without regard to the wishes of the contracting parties"); Volt Info. Scis. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 479, 103 L. Ed. 2d 488, 109 S. Ct. 1248 (1989) ("Arbitration under the Act is a matter of consent, not coercion."); see also Opals on Ice Lingerie, Designs by Bernadette, Inc. v. Bodylines, Inc., 320 F.3d 362, 369 (2d Cir. 2003); Thomson-CSF, S.A. v. American Arbitration Ass'n, 64 F.3d 773, 776 (2d Cir. 1995).

Defendant contends that there was no binding CBA, and therefore no agreement to arbitrate, at the time of the arbitration. In the summer or fall of 2002, the parties commenced negotiations to enter into a CBA. (Def.'s Mem. of Law in Opp'n to Pl.'s Mot. for J. on the Pleadings at 2). A two-year CBA was drafted and made retroactive to June 1, 2003. However, the agreement was not signed by defendant until June 15, 2003, which was after the initial term of the agreement had expired, and after the arbitrator had issued the award. (Id. at 2, 8). Defendant argues that in the absence of a signed agreement to arbitrate or a written submission to the arbitrator, the arbitrator lacked authority to consider the dispute. Yet even in the absence of a signature, "a party may be bound by an arbitration clause if its subsequent conduct indicates that is it assuming the obligation to arbitrate." Thomson-CSF, S.A., 64 F.3d at 777; see also Gvozdenovic v. United Air Lines, Inc., 933 F.2d 1100, 1105 (2d Cir. 1991); ILGWU Nat'l Retirement Fund v. Levy Bros. Frocks, Inc., No. 84-3673, 1987 U.S. Dist. LEXIS 7731, at *28 (S.D.N.Y. Aug. 21, 1987) (stating that "a collective bargaining agreement, although unsigned, can be impliedly adopted or ratified through conduct manifesting an intent to be bound.").

Defendant's conduct indicates that it intended to be bound by the CBA and the arbitration clause it contained. On June 15, 2003, after the arbitration hearing and issuance of the award, defendant *signed* the CBA, the best evidence of an intent to be bound by its terms. Therefore, the

arbitration clause within the agreement was binding and the arbitrator was empowered to resolve the termination dispute.

E.    Notice of Hearing

Defendant also claims that the award was invalid because it did not receive twenty days notice of the arbitration hearing, as provided in the unsigned CBA. Participating in arbitration proceedings without timely objecting to the submission of the dispute to arbitration may waive a party's right to make such an objection. See Opals on Ice Lingerie, 320 F.3d at 368. On the other hand, merely participating in arbitration proceedings to contest the arbitrability of the dispute does not constitute waiver. See First Options of Chicago v. Kaplan, 514 U.S. 938, 946, 131 L. Ed. 2d 985, 115 S. Ct. 1920 (1995) (holding that "merely arguing the arbitrability issue to an arbitrator does not indicate a clear willingness to arbitrate that issue"); see also AGCO Corp v. Anglin, 216 F.3d 589, 593 (7th Cir. 2000) ("If a party willingly and without reservation allows an issue to be submitted to arbitration, he cannot await the outcome and then later argue that the arbitrator lacked authority to decide the matter. If, however, a party clearly and explicitly reserves the right to object to arbitrability, his participation in the arbitration does not preclude him from challenging the arbitrator's authority in court.").

David Von Lindern, defendant's president, admittedly participated in the arbitration hearing and did not object to the submission of the Landi dispute to the arbitrator or raise the issue of notice until the determination of the arbitrator was issued. Although defendant's contention is that Von Lindern would have objected if he had been aware of the arbitration provision, the notice requirement, and effect of participating in the hearing without counsel, it was the defendant's responsibility to familiarize itself with the CBA and its provisions.

F.  Issues of Material Fact

Defendant contends that there are material factual issues which require discovery. Specifically, defendant claims that "it was unfair for the arbitrator to rule, only after the hearing, that the Hijazi affidavit was without probative value, without allowing defendant the opportunity to offer [Hijazi's] testimony at a later date." (Def.'s Mem. of Law in Opp'n to Pl.'s Mot. for J. on the Pleadings at 6). It is well settled that arbitrators are given broad discretion to determine whether to hear evidence. Although refusal "to hear evidence pertinent and material to the controversy," is a ground for vacating an arbitration award, 9 U.S.C. § 10(a)(3) (2000), courts have interpreted section 10(a)(3) to mean that arbitration evidentiary determinations will not be reexamined unless fundamental fairness is violated. See Alexander Julian, Inc. v. Mimco, Inc., No. 01-7621, 2002 U.S. App. LEXIS 2650, at **7 (2d Cir. Feb. 19, 2002). In other words, in handling evidence, an arbitrator "need not follow all the niceties observed by the federal courts." Id.; see also Andrea Doreen, Ltd. v. Bldg. Material Local Union 282, 250 F. Supp. 2d 107, 115 (E.D.N.Y. 2003) ("Any argument that the Arbitrator did not give the evidence . . . the consideration it deserved also fails because, even if this were true, it would not justify vacating the award.").

Arbitrators need only grant the parties a fundamentally fair hearing, which "requires that the parties be permitted to present evidence and cross-examine adverse witnesses." GFI Sec. LLC v. Labandeira, No. 01-793, 2002 U.S. Dist. LEXIS 4932, at *20 (S.D.N.Y. Mar. 26, 2002); see also Areca, Inc. v. Oppenheimer & Co., 960 F. Supp. 52, 55 (S.D.N.Y. 1997) ("Although arbitrators must have before them enough evidence to make an informed decision, they need not compromise the speed and efficiency that are the goals of arbitration by allowing the parties to

8

present every piece of relevant evidence."). At the hearing, defendant was allowed to both present evidence and cross-examine Landi. The arbitrator heard Von Lindern's testimony and permitted him to contact Hijazi via telephone to obtain the latter's live testimony, which was unsuccessful. (Def.'s Mem. of Law in Opp'n to Pl.'s Mot. for J. on the Pleadings at 4). As the arbitrator's opinion noted, "Hijazi is too crucial a witness in behalf of the Employer's case to be exempted from cross-examination." (Answer ¶ 15, Exh. B).

Additionally, defendant states that the "arbitrator demonstrated bias by her failure to acknowledge that the grievant's testimony supported the defendant's claims." (Def.'s Mem. of Law in Opp'n to Pl.'s Mot. for J. on the Pleadings at 6). The fact that Landi's testimony did not contradict defendant's claims does not prevent the arbitrator from ruling that her termination was improper. Nor does this fact provide "clear evidence of impropriety" necessary to show bias and justify vacatur of the award. See Smiga v. Dean Witter Reynolds, Inc., 766 F.2d 698, 707-08 (2d Cir. 1985). Defendant merely concludes that the arbitrator was biased because she ordered the reinstatement of Landi although the latter failed to refute the defendant's allegations against her.

IV. Conclusion

Plaintiff's motion for judgment on the pleadings is GRANTED. Accordingly, plaintiff's arbitration award against defendant is CONFIRMED. The Clerk of Court is directed to close this case.

IT IS SO ORDERED.


_____
Sandra J. Feuerstein

United States District Judge

Dated: December __, 2003

Brooklyn, New York

10